**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **Criminal No. 18-10270-RWZ** |
| | ) | |
| ALLAH MALLORY a/k/a "Parod" | ) | |
| Defendant. | ) | |

## TRIAL BRIEF OF THE UNITED STATES

The United States, by its undersigned attorneys, respectfully submits this trial brief to identify relevant issues regarding the trial, which is scheduled to begin on June 10, 2019.

### I.    SUMMARY OF GOVERNMENT'S CASE

On May 15, 2019, a grand jury in this district returned a superseding indictment charging Allah Mallory a/k/a "Parod," with one count of distributing heroin and cocaine base on or about July 9, 2019.   The previous indictment issued on August 15, 2018 and defendant was arrested on August 23, 2018.

This indictment arose from a gang investigation in Brockton and Boston by the FBI in 2018, dubbed "Operation Landshark."   The investigation utilized cooperating witnesses to make consensual recordings and controlled purchases of drugs and guns.   This case involves a single controlled buy by CW-1 from Allah Mallory.

Prior to the controlled buy in this case, agents first searched the CW and its car for money or contraband, provided the CW with a recording device and monitor, outfitted the car with audio/video recording equipment, and provided the CW with a set amount of Official Government Currency ("OGC") to make the purchase.   After the buy, agents searched the CW and its car, and retrieved the drugs and recording devices.

1

### COUNT 1: July 9, 2018 Distribution of Heroin and Cocaine Base

Prior to July 5, 2018, CW-1 saw MALLORY on North Warren Avenue and spoke to him. CW-1 already knew MALLORY, and knew that MALLORY, like CW-1, was a drug dealer, from their having been incarcerated together previously.[1] During their conversation, CW-1 asked whether MALLORY was able to sell drugs to CW-1 and the two exchanged phone numbers. CW-1 reported this meeting to the FBI.

On July 5, 2018, CW-1 made a consensually recorded call to MALLORY at telephone number 774-712-7618 (the number provided by MALLORY), which did not go through. On July 8, 2018, CW-1 spoke to MALLORY and set up a drug deal for the following day. This call was not recorded.

On July 9, 2018, at 12:27 p.m.,[2] CW-1 called and spoke to MALLORY. CW-1 asked MALLORY to meet up later, which meant to purchase drugs. This call was not recorded, but CW-1's phone logs confirm the call.

At 3:52 p.m., CW-1 placed a consensually recorded call to MALLORY. MALLORY said "I'll be right there."

At 4:36 p.m., CW-1 sent a text message to MALLORY, which was photographed, stating "U close." At 4:38 p.m., CW-1 received an incoming call from MALLORY, which was recorded. MALLORY told CW-1 to come see him on Milton Street.

Agents followed the previously described procedures, with negative results; provided $200 in OAF; and instructed CW-1 to meet with MALLORY to purchase $100 worth of heroin

---

1 Absent a stipulation, the government will introduce records of their overlapping incarceration. The government is addressing this issue by a separate motion in limine.
2 All times are approximate.

and $100 worth of cocaine base.

Agents surveilled CW-1 to the area of North Warren Avenue and Milton Street in Brockton, where he arrived at approximately 4:50 p.m. At approximately 4:52 p.m., CW-1 called MALLORY and said "Yo, I'm here but I don't know what number though." CW-1 then drove further up the street and parked.

At 4:56 p.m., CW-1 parked and asked MALLORY, who was waiting outside, to get into the car. MALLORY told CW-1 to join him. MALLORY got out of the car and entered 210 N. Warren Avenue, on the corner of N. Warren Avenue and Milton Street, with MALLORY, entering the basement. However, CW-1 left the second audio/video recording device in the car. At 4:58 p.m., CW-1 returned to the car to grab the recorder. At 4:59 p.m., CW-1 went inside the house and returned to the basement.

In the basement, MALLORY stood against the wall, behind a table with drug packaging materials. MALLORY asked CW-1 how much of the drugs he wanted, and CW-1 replied, "a hundred of the brown [i.e., heroin] and a hundred of the hard [i.e., cocaine base]" and placed the $200, in OAF on the table. While preparing packages of drugs, MALLORY asked CW-1 about growing marijuana. CW-1 said that he needed to get a dehumidifier for the basement so the plants would not be killed. MALLORY handed a baggie of drugs to CW-1. MALLORY then prepared a second baggie, which he handed to CW-1. MALLORY placed a larger plastic bag containing a white substance, which the agents estimated as approximately an ounce, on the table.

Agents saw CW-1 leave the house and get back into the car. MALLORY accompanied CW-1, got into the driver's seat of CW-1's car, and took a cigarette. MALLORY left and CW-

3

1, followed by surveillance, drove to the pre-determined location. Upon arriving, agents followed the previously described procedures with negative results and retrieved a plastic baggie containing approximately 1.2 grams of a brown powder and two plastic baggies containing a total of approximately 1.1 grams of an off-white substance.

The drugs were submitted to the DEA Northeast Laboratory, which concluded that they were heroin and cocaine base, respectively.

Also following the controlled buy, agents and detectives familiar with the defendant reviewed the video and identified the defendant on the video. The government will offer testimony from one such detective at trial.[3]

## II.  [PROPOSED] STIPULATIONS OF FACT

The government will provide the defendant with proposed stipulations regarding the drugs, the fact that the defendant was on a GPS monitor which showed him to be at the corner of North Warren and Milton Street in Brockton at the time of the controlled buy, and CW-1's familiarity with the defendant from their previous incarceration together. If the defendant agrees to any of the stipulations, the parties will advise the Court.

## III.  ANTICIPATED EVIDENTIARY ISSUES

**A. <u>GPS Monitoring of the Defendant</u>.** At the time of the controlled buy, the defendant was on pre-trial release from Plymouth Superior Court, after having posted a large bond (the charges in Plymouth Superior Court remain pending). As a condition of release, the

---

3  The detective will testify that he is familiar with the defendant and in fact arrested him on at least one occasion, which is a sufficient basis for an identification. *See United States v. Ortiz*, 729 F. Supp. 2d 443, 445 (D. Mass. 2010). Of course, the nature of the detective's familiarity, including the arrest, can be the subject of a limiting instruction to the jury.

defendant was ordered to wear a GPS monitoring device, which transmitted information regarding his precise location.   That data for July 9, 2019, from approximately 4:35 p.m. to 5:10 p.m., shows that the defendant was at in the area of North Warren Avenue and Milton Street: specifically, inside the house at 210 North Warren Avenue and on the street.

Absent a stipulation, the government will introduce evidence that the defendant was ordered to wear a GPS monitoring device and was wearing that device on July 9, 2018; and regarding the GPS location data transmitted by the device.

**B.** **Expert testimony**. The government intends to introduce evidence from DEA Senior Forensic Chemist **James DiSarno** and **Carmen Masters** regarding the analysis they performed on each of the FBI exhibits, their conclusion that they are heroin and cocaine base, and that the net weight is as specified in the DEA-7's previously produced.   They will base those conclusions on the testing procedures set forth in laboratory documents previously disclosed to defense counsel.

### IV.   JURY VOIR DIRE QUESTIONS

The government's proposed jury voir dire questions were filed on May 19, 2019.   The government asks the court to pay particular attention to the reference to "CSI EFFECT."

### V.   PROPOSED JURY INSTRUCTIONS

The government's proposed jury instructions were filed on May 19, 2019. The government asks the court to pay particular attention to the reference to "CSI EFFECT."

### VI.   LENGTH OF TRIAL

The government anticipates calling as witnesses S/A Timothy Kenny, the CW, additional agents who performed surveillance, and a detective previously familiar with the defendant who

will identify the defendant from the video in the case. In addition, depending on whether the government and defendant enter stipulations of fact, the government may call the chemist, a keeper of records for the GPS monitoring system and the defendant's state probation officer who placed him on GPS monitoring. The government anticipates offering as exhibits the audio/video recording of the controlled buys and the audio recordings of certain consensually monitored calls. The government will offer only an excerpt of the buy, which has been considerably shortened from the original recording. In total, the government expects its case-in-chief to last no more than several days.

## VII.    SPECIAL ARRANGEMENTS

The government is not making any requests for special arrangements for trial at this time. As the court is aware, the government expects to offer the testimony of Senior Forensic Chemists James DiSarno and Carmen Masters, who work in New York. Depending on the actual progress of the trial and their travel schedules and family obligations, the government may request that they be allowed to testify out of order.

The government will consult with court personnel to ensure that the format of its discs will be compatible with the courtroom's facilities. The government also anticipates that it may refer to certain charts or photographs (which will require the use of an easel) during its opening statement. The government will address those issues with defense counsel and the Court prior to trial.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By:   /s/ Timothy E. Moran
       TIMOTHY E. MORAN
       Assistant U.S. Attorney

Dated: June 3, 2019

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Timothy E. Moran
TIMOTHY E. MORAN
Assistant United States Attorney

Date: June 3, 2019