```
            UNITED STATES DISTRICT COURT
            DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA        )
                                )
                                )
v.                              )Criminal No. 18-CR-10270-RWZ
                                )
ALLAH MALLORY                   )
```

## Motion and Notice to Impeach Government Witness With Specific Acts of Prior Misconduct

Defense counsel in the above-referenced matter hereby provides notice of his intent to impeach the government's cooperating witness (hereinafter referred to as "CW-1") with crimes, wrongs, or other acts, pursuant to Fed. R. Evid. 404(b)(2), as well as 405, 607, 608, and 609. As such, CW-1's credibility at this trial is squarely at issue. The defendant does not necessarily seek to introduce this evidence to impeach CW-1's character generally (although reserves the right to do so), but primarily submits that the evidence sought to be introduced is for the purposes of establishing that the CW-1 has a motive to testify in a manner consistent with the government's theory of the case, has the intent to do so, and that CW-1's behavior in the course of the alleged illegal transaction with the defendant was not borne out of accident, but was rather an intentional act.

1

In addition to the information provided by the government regarding promises, inducements, and rewards provided to CW-1 for his work as an FBI informant, (and whatever other evidence may be elicited at trial) the defendant seeks to confront CW-1 with the following.

In December of 2006, Brockton police executed a search warrant on CW-1's home and found, among other items consistent with drug dealing, 350 grams of cocaine. In 2009, CW-1 was convicted of trafficking in cocaine on this matter, and sentenced to 15 years in state prison. The conviction was reversed on appeal upon a finding by the Appeals Court that there initially lacked probable cause for the search warrant to have issued at CW-1's residence.

In 2008, CW-1 plead guilty in Norfolk Superior Court to Trafficking in Cocaine, and was sentenced to three years in state prison. In February of 2005, police executed a search warrant at an address in Stoughton. Upon execution of the warrant, police saw CW-1 run to an upstairs bathroom and flush an item in the toilet. Police found cocaine, methadone, and approximately $3,000 in cash on the person of CW-1, and found more contraband within the residence. The resident of the premises, (not CW-1) indicated that CW-1 was his cocaine dealer. Police searched the septic system with negative results.

That same evening, police responded to the same address on a report that men were digging into the yard at the end of the driveway in the area of the sewage tank. Upon seeing police, CW-1 ran, forcibly escaped arrest, and entered the residence. Upon entry, CW-1 slammed the door on a police officer's hand, and held it there. CW-1 called for assistance from the within the residence to help hold the door. Police were able to eventually open the door and arrest CW-1. Police located thirty grams of cocaine and 103 methadone pills.

In that case, one of the counts for possession with intent to distribute a class B substance was vacated and dismissed due to malfeasance by a state drug laboratory chemist. Nevertheless, the convictions for trafficking in cocaine and conspiracy remained in tact.

Furthermore, in 2013, police executed a search warrant at a residence in Brockton. Upon executing the warrant, police essentially found a fully-equipped marijuana grow house with fans, lights, exhaust tools, electrical supply inverters, carbon dioxide tanks, filters, and a watering supply system. Police confiscated a total of 76 marijuana plants from the premises. CW-1's paperwork, a copy of his identification card, credit cards issued in CW-1's name, a

notebook on growing instructions, and money were located in the residence.  Ultimately, the case was dismissed.

The defendant should be permitted to use this information to attack CW-1's credibility at trial.  Federal Rule 404(b)(2) permits the introduction of evidence for a purpose other than character evidence, including, motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

Rule 401 and 402 together "establish the broad principle that relevant evidence – evidence that makes the existence of any fact at tissue more or less probable – is admissible unless the Rules provide otherwise."  Huddleston v. United States, 485 U.S. 681, 687 (1988).  While it is typically the government that seeks to admit Rule 404(b) evidence against a defendant in a criminal case, there is nothing that renders it inapplicable to impeach government witnesses, especially in a criminal case.  Some courts have referred to this as "reverse 404(b) evidence."  "[A] defendant must demonstrate that the reverse 404(b) evidence has a tendency to negate his guilt" and that it is more prejudicial than probative.  United States v. Stevens, 935 F.2d 1380, 1405 (1991).  The Supreme Court has held that the trial judge need not make a preliminary finding that the witness committed the act by a preponderance of the

4

evidence, instead, the trial court only needs to determine whether it the information fits within 404(b), and is otherwise relevant pursuant to Rule 403. <u>See</u>, <u>Huddleston</u> at 689.

Moreover, when it is the defendant that intends to introduce reverse 404(b) evidence, it has been suggested that "a lower standard . . . should govern the admissibility of reverse 404(b) evidence because prejudice to the defendant is not a factor." <u>Stevens</u>, at 1404.

This case involves CW-1's alleged purchase of illegal drugs from the defendant. Although portions of the interaction between CW-1 and the defendant were recorded, not all of it was. CW-1 left the recording device in his car for a period of time, interacted with the defendant, and then reacquired the recording device.

CW-1's prior cases can show that his failure to record the entire interaction with the defendant was not a mistake, but instead intentional. Moreover, at the time of the incident and at the time of his testimony at this trial, CW-1 had/has a continuing motive, bias, modus operandus, and/or an established common scheme and/or practice to subvert, destroy, alter, or otherwise manipulate criminal evidence for self-gain, in a manner outside of the government's watch, and outside of the

5

bounds of CW-1's signed agreement with the FBI.  Defense counsel expects the government to ask CW-1 to identify the person in the video in the courtroom.  That, in and of itself, brings into relevance the credibility and bias of the government's witness on the stand.

CW-1's brushes with the law also implicate his credibility in this trial, in that, CW-1 has a motive and bias to testify in a manner that the government deems acceptable, and not necessarily the truth.  These specific acts of misconduct, especially the imposition of a fifteen year state prison sentence for drug dealing (although it was overturned), accentuate CW-1's current motive, interest, and bias to testify in a manner consistent with what the government will argue is the truth, and the defendant should be permitted to elicit this information from the witness.

Among other things disclosed by the government, after being caught, (and not charged with), a significant amount of cocaine, CW-1 agreed to be an informant for the FBI and has been paid tens of thousands of dollars by the government.  Including the defendant, it appears approximately thirteen people have been arrested and charged in Federal Court.  CW-1 has been compensated approximately $19,000 in relocation fees alone, and

6

received other rewards that need not necessarily be disclosed in this motion.  A month after the defendant's arrest, CW-1 was arrested in a different state for driving a motor vehicle under the influence of drugs.  CW-1 admitted to ingesting drugs.  Police found heroin on CW-1's person.  The case was dismissed. The government's disclosure indicates that even CW-1 believes that it was at the behest of the FBI.  The FBI has permitted CW-1 to work for them through today and this trial.

Defense counsel assumes that the benefits CW-1 received that were disclosed by the government will be admissible at trial.  When viewed more completely, however, those benefits show more clearly why CW-1's prior misconduct should be introduced at this trial.  It more strongly illuminates CW-1's bias to testify in a manner consistent with what the government demands in the course of this case.

As far as the prior convictions are concerned, the incidents also implicate Fed. R. Evid. 607, 608(b)(1), and 609(a)(1)(A), and 609(b)(1), regardless of the fact that the prior convictions were overturned, or are over ten years old, the evidence should be admissible.  CW-1 is not the defendant, but his credibility is squarely at issue at the defendant's trial.  In order for the defendant to

receive a Constitutionally-guaranteed fair trial, the critical witness in this case, CW-1 must be questioned about this so that the jury can fully and fairly assess CW-1's credibility.

Defense counsel has already provided the government with documents of the incidents related to these incidents referred to in this motion, and can/will file them with the court, but because of redaction rules cannot do so on an immediate basis.

Executed this 1st day of November, 2019.

Respectfully submitted,

By:

/s/ Austin C. Tzeng
AUSTIN C. TZENG
Law Office of Austin C. Tzeng
Suite 501
21 Mayor Thomas J. McGrath Hwy
Quincy, MA 02169
781-929-4882
COUNSEL TO Allah Mallory